**Joseph WALKER, Plaintiff**

v.

**State of CONNECTICUT, et al., Defendants.**

No. 3:98–CV–998 (EBB).

United States District Court, D. Connecticut.

July 7, 2000.

William B. Barnes, Rosenstein & Barnes, Fairfield, CT, for Joseph Walker.

Michael J. Lanoue, Attorney General's Office, Hartford, CT, for State of Conn., Fairfield County Sheriff's Dept., William L. Mehlhorn, Richard T. Rilling, Sheriff's Advisory Bd., Patricia C. Lempicki.

## RULING ON MOTION FOR SUMMARY JUDGMENT

ELLEN B. BURNS, Senior District Judge.

### INTRODUCTION

Plaintiff Joseph Walker ("Walker" or "Plaintiff") is an African–American Special Deputy Sheriff in Fairfield County. He brings this action against The Estate of Edward S. Mak, the former High Sheriff of Fairfield County, William Melhorn, Chief Deputy Sheriff of Fairfield County, Richard Rilling, Chief Court Supervisor for Fairfield County,[1] the State of Connecticut, the Sheriff's Advisory Board, the Fairfield County Sheriff's Department,[2] and the Executive Director of the Sheriffs' Advisory Board, Patricia Lempicki. The Estate Of Mak, Rilling and Melhorn are sued in both their official and individual capacities. Lempicki is sued in her official capacity only.

■ The First Amended Complaint asserts nine claims. Count One alleges a violation of Title VII; Count Two alleges a violation of 42 U.S.C. Section 1981; Count Three alleges a violation of 42 U.S.C. Section 1983; Count Four alleges a violation of the Connecticut Fair Employment Prac-

---

1. In Plaintiff's moving papers he asserts that he is seeking no relief from Melhorn and Rilling on Counts One and Five because they were unquestionably supervisors. Rather he claims, relying on *Cook v. Arrowsmith Shelburne, Inc.*, 69 F.3d 1235, 1240, n. 2 (2d Cir.1995), that they may be named "purely as agents for discovery purposes". The *Cook* footnote does not stand for that proposition. Discovery is governed by Fed.R.Civ.P. 26 through 37. The Court finds that it is inappropriate to name as a defendant a party that

one knows relief may not be obtained from. Accordingly, summary judgment is granted as to Melhorn and Rilling on Counts One and Five.

2. Plaintiff further acknowledges in his moving papers that there is no entity entitled "Fairfield County Sheriff's Department". Accordingly, he concedes that summary judgment may be granted as to this non-existing entity.

tices Act ("CFEPA"); Count Five alleges individual violations of Title VII; Count Six alleges intentional violations of Section 1981; Count Seven alleges intentional violations of Section 1983; Count Eight alleges intentional violations of CFEPA; and Count Nine appears to seek injunctive relief based on the equitable powers of the Court.[3]

## STATEMENT OF FACTS

The Court sets forth only those facts deemed necessary to an understanding of the issues raised in, and decision rendered on, this Motion. The facts are distilled from Plaintiff's Amended Complaint.

Plaintiff asserts that there are very few minority Special Deputy Sheriffs in the Fairfield County Sheriff's office. Once hired, these individuals have difficulty getting promoted to higher ranks. In 1995 an announcement was made, in which it was stated that promotions would thereafter be based on merit, as measured by the candidates' scores on oral examinations, and that all vacancies would be posted. There was just one test given and Plaintiff alleges that the promotions were not, in fact, made on the basis of test scores. He further contends that at least three promotions were made without any notice of vacancy or written examination.

Since 1995 many persons were named as acting supervisors, including Mak's daughter. All of the acting supervisors were Caucasian. Also since 1995, Caucasian supervisors have been allowed to nominate subordinates for promotions. The recommendations of Caucasian employees were approved but those of African–Americans and Hispanics were not.

Plaintiff asserts that the Defendants have permitted a racially hostile and offensive working environment to exist within the Fairfield County Sheriff's office. This is best demonstrated through the use of racist slurs and racist graffiti. Although this was reported to the supervisors, no one took any action. Another example of the offensive working environment is in the area of discipline. While Caucasian sheriffs are usually just spoken to, African–American sheriffs are investigated thoroughly and files are kept on any discipline given. In fact, Plaintiff was written up for showing a "lack of sensitivity" when he disciplined a Caucasian sheriff over whom Plaintiff had seniority.

Although such policies are required by federal and state law, the defendants have never had a substantive policy and procedure to deal with complaints of racial and/or nationality discrimination, made by members of the public or employees. Further, the Office has no affirmative action plan, even though this is also required by state law.

Plaintiff alleges that African–American and Hispanic officers were given less equipment, in worse condition, than that given to Caucasian co-workers.

Plaintiff was also repeatedly denied acting Lieutenant's pay, although he was performing the duties required by such a position. His predecessor was given the additional pay and Plaintiff was doing his exact same job.

On two occasions, Plaintiff made formal complaints to State affirmative action officers. Although these officers agreed that Plaintiff was being subjected to a hostile and racially offensive working environment, nothing was ever done about it.

This lawsuit follows a complaint to the CHRO, which agency issued a release of jurisdiction letter on May 22, 1998.

---

**3.** When a plaintiff sues a state official in his official capacity for violating federal law, the federal court may only award prospective injunctive relief, which may not include an award for retroactive monetary damages. *Edelman v. Jordan*, 415 U.S. 651, 677, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). Inasmuch as the prayer for relief seeks this type of damages, which are obviously disallowed, Count 9 is dismissed for failure to state a claim upon which relief may be granted. Fed.R.Civ.P. 12(b)(6).

## *LEGAL ANALYSIS*

### I. *The Standard of Review*

In a motion for summary judgment the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). *See also Anderson v. Liberty Lobby*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment).

If the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial, then summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23, 106 S.Ct. 2548. *Accord, Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d. Cir.1995) (movant's burden satisfied if it can point to an absence of evidence to support an essential element of nonmoving party's claim).

The court is mandated to "resolve all ambiguities and draw all inferences in favor of the nonmoving party...." *Aldrich v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir.), *cert. denied*, 506 U.S. 965, 113 S.Ct. 440, 121 L.Ed.2d 359 (1992). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), *cert. denied*, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991). If the nonmoving party submits evidence which is "merely colorable", or is not "significantly probative," summary judgment may be granted. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505.

"[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact. As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 247–48, 106 S.Ct. 2505 (emphasis in original).

### II. *The Standard As Applied*

### A. *Title VII Claims*

In analyzing a statute in order to determine if a cause of action is set forth in a complaint, the starting point is always the definitional section for the statute in question. In order to determine the viability of Walker's Title VII claim, one must look to the definitions of the words "employer" and "employee."

Title VII, 42 U.S.C. § 2000e, defines an employer, in pertinent part, as "a person engaged in an industry affecting commerce ...." 42 U.S.C. § 2000e(b). The term "commerce means trade, traffic, commerce, transportation, transmission, or communication among the several states ... or between points in the same State but through a point outside thereof." 42 U.S.C. § 2000e(g). Applying this mandatory definition to the Estate of Edward Mak, the Court finds that Mak was not Walker's "employer" for purposes of Title VII.

Further, Walker himself is not an "employee" for purposes of Title VII. 42 U.S.C. § 2000e(f) reads in pertinent part: " ... employee means an individual employed by an employer, except that the term 'employee' shall not include any person elected to public office ... or political subdivision ... or any person chosen by

such person to be on such officer's personal staff...."

The Court of Appeals for the Tenth Circuit had the identical question before it, i.e. was a deputy sheriff an "employee" for purposes of Title VII ? The Court answered the inquiry in the negative. *Owens v. Rush,* 654 F.2d 1370 (10th Cir.1981). This Court's analysis is identical. The High Sheriff is an elected official of a political subdivision of the State. His rights, duties, authority, salary, and all incidents of the office are set forth by statute. *See* Conn.Gen.Stat. §§ 6–30 et seq. A High Sheriff may only be removed by the General Assembly while he is serving out his elected term. Conn.Gen.Stat. § 6–36. Each High Sheriff has the right to hire deputies, such as Walker, and advise him of any and all work assignments, to which it is then the duty of the deputy to accede. The deputies continue their employment for as long as the High Sheriff's term lasts, unless removed earlier by for cause.

The *Owens* Court held that, based on the nearly identical Kansas statutes, a deputy's relationship was an intimate and sensitive position vis a vis the sheriff. "[T]his is consistent with the highly sensitive and confidential nature of the work which deputies perform as well as the considerable powers of the deputy to represent [the High Sheriff] in legal proceedings and in the eyes of the public." *Owens,* 654 F.2d at 1376, *quoting Ramirez v. San Mateo County Dist. Attorney's Office,* 639 F.2d 509, 513 (9th Cir.1981) (dismissing Title VII claim of assistant district states attorney after performing like analysis); *See also U.S. v. Gregory,* 582 F.Supp. 1319 (D.Va.1984) (position of deputy sheriff sort of job Congress envisioned to be within the "personal staff" exception). The Court believes this reasoning is well-founded and now follows same. Accordingly, summary judgment on Walker's Title VII claim

against the Estate of Mak in his official and individual capacities, is granted.[4]

■ In the alternative, summary judgment is also granted against the Estate of Edward Mak for Mak's alleged individual violations of Title VII. Individuals with supervisory control over a plaintiff may not be held personally liable under Title VII. *Tomka v. Seiler Corp.,* 66 F.3d 1295, 1313 (2d Cir.1995). Inasmuch as Mak was indisputably Walker's supervisor, this claim fails as well.

The State may, however, be sued for violations of Title VII. *Fitzpatrick v. Bitzer,* 427 U.S. 445, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976). The State has conceded in its Memorandum of Law that, for purposes of Title VII, it is Walker's employer. *See,* Memorandum of Law in Support of Motion for Summary Judgment at 2 ("For purposes of Title VII, the State of Connecticut is his employer.") Accordingly, summary judgment may not be granted as to the Title VII claim against the State. However, the only relief which may be granted consistent with Eleventh Amendment immunity is prospective, injunctive relief. No money damages or retroactive relief of any kind are permitted. *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974).

### B. *Sections 1981 and 1983 Claims Against the State*

Although Plaintiff's Complaint is not a model of clarity, he asserts that the "Defendants", which includes the State of Connecticut, are liable to him for violations of Sections 1981 and 1983. Both claims against the State must fail as to any monetary, retroactive equitable remedies sought by Plaintiff.

In *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), it was held that retroactive welfare benefits awarded by a federal district court to the

4. Although this claim is alleged to be against "all individuals", Mak is the only one who could conceivably fall into this position. Ac-

cordingly, the claims are dismissed as to those individual defendants, also.

plaintiff class, by reason of the wrongful denial of benefits by Illinois officials violated the Eleventh Amendment, and that in an action under 42 U.S.C. § 1983 "a federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief ... and may not include any award of damages which requires payment of funds from the State Treasury." *Edelman v. Jordan,* 415 U.S. 651, 677, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974). The analysis pursuant to 42 U.S.C. § 1981 is identical.

Summary judgment is denied as to the Section 1981 and 1983 claims against the State, insofar as Plaintiff seeks prospective, injunctive relief. It is granted as to any monetary damages or retroactive equitable relief sought.

### C. *Section 1981 and 1983 Claims Against the Remaining Defendants*

The remaining Defendants under this Count are the Estate of Edward Mak, Lempicki, Mehlhorn and Rilling in their official and individual capacities.

In *Will v. Michigan Department of State Police et al.,* 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), the plaintiff had sued the Department of State Police and its Director in his official capacity for failing to promote him. The Supreme Court held that a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. As such, it is no different from a suit against the State itself. *Id.* at 71, 109 S.Ct. 2304. "We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Id.*

■ There can be no doubt that the Sheriff's Advisory Board is a state agency, as it answers directly to the Department of Administrative Services and other state agencies, as required. Further, it is mandated that the Board submit an annual report to the Governor. Conn.Gen.Stat. 6–

32b. If the Board is immune from Section 1983 liability, and the Court holds that it is, then Lempicki, as its Administrative Director, is as well. The Amended Complaint is not a complaint against her, but her office. Under the holding of *Will,* the Court finds that Lempicki is immune from suit in her official capacity.

■ The Court also finds that the Estate of Mak, Rilling and Melhorn, in their official capacity, are immune from the Plaintiff's 1981 and 1983 causes of action set forth in the Amended Complaint. Although Mak was technically a county sheriff, he was paid by the state, which set his compensation; his duties were for the State of Connecticut; he could be removed from his position only by the General Assembly; and he had to post a bond upon taking office which was satisfactory to the Governor. *See* Conn. Gen.Stat. Chapter 78, §§ 6–30 to 6–48, inclusive. Rilling and Melhorn were officers of the Sheriff's Department and were Walker's direct supervisors. As such, any award against them would be of necessity paid by the State. Accordingly, Eleventh Amendment immunity attaches to these Defendants in their official capacities. The same reasoning is equally applicable to Fairfield County Sheriff's Department and the Sheriff's Advisory Board and both entities are immune from these claims.

■ The claims against these Defendants in their individual capacities may, however, go forward. Any government official sued in his or her individual capacity is a "person" within the meaning of Section 1983. *Hafer v. Melo et al.,* 502 U.S. 21, 25–31, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). Through Section 1983, Congress sought "to give a remedy to parties deprived of their constitutional rights, privileges and immunities by an official's abuse of his position." *Monroe v. Pape,* 365 U.S. 167, 172, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), *quoted in Hafer,* 502 U.S. at 27, 112 S.Ct. 358. Accordingly, it authorized suits to redress violations of civil rights by persons acting "under color of any statute,

ordinance, regulation, custom or usage." 42 U.S.C. § 1983.

■ In *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), personal representatives of the estates of three students who died at Kent State University sought damages from the Governor of Ohio and other state officials. The district court granted these parties Eleventh Amendment immunity. The Supreme Court rejected this view. "[S]ince *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), we said it has been settled that the Eleventh Amendment provides no shield for a state official confronted by a claim that he has deprived another of a federal right under the color of law." *Scheuer,* 416 U.S. at 237, 94 S.Ct. 1683. While the doctrine of *Ex Parte Young* does not apply where an individual seeks damages from the public treasury, damages awards against individual defendants in federal courts are a permissible remedy for a violation of Section 1983. *Hafer,* 502 U.S. at 30, 112 S.Ct. 358. "That is, the Eleventh Amendment does not erect a barrier against suits to impose 'individual and personal liability' on state officials under § 1983." *Id.* at 31–31, 112 S.Ct. 358, *quoting Scheuer,* 416 U.S. at 237, 94 S.Ct. 1683.

This analysis would be the same for 42 U.S.C. Section 1981. Accordingly, summary judgment is denied as to these Defendants acting in their individual capacities.

### D. *The CFEPA Claims*

Counts Four and Eight of the Complaint allege violations of the CFEPA. The only way Plaintiff may bring a CFEPA claim in federal court against the State is by the consent of the State to be sued in that forum. The State has waived its immunity, but only as to cases brought in the Superior Court. Conn.Gen.Stat. Section 46a–99 provides that:

Any person claiming to be aggrieved by a violation of any provision of sections 46a–70 to 46a–78, in-inclusive, may peti-

tion the **superior court** for appropriate relief and **said court** shall have the power to grant such relief, by injunction or otherwise, as it deems just and suitable.

(Emphasis added).

■ "A state does not consent to suit in federal court by consenting to suit in the courts of its own creation." *Smith v. Reeves,* 178 U.S. 436, 441–445, 20 S.Ct. 919, 44 L.Ed. 1140 (1900). This Court declines Plaintiff's invitation to hold that simply because the State has consented to be sued in state court, it *a fortiori* must have meant to consent to federal jurisdiction also. "[I]t is not consonant with our dual system for the federal courts . . . to read the consent to embrace federal as well as state courts . . . [A] **clear declaration** of the state's intention to submit its fiscal problems to other courts than those of its own creation must be found." *Great Northern Life Insurance Co. v. Read,* 322 U.S. 47, 54, 64 S.Ct. 873, 88 L.Ed. 1121 (1944) (emphasis added), *quoted in Pennhurst State School & Hosp. v. Halderman,* 465 U.S. 89, 99–100 n. 9, 104 S.Ct. 900, 79 L.Ed.2d 67 (1983). The Court believes that the wording of the Connecticut statute, quoted verbatim, is the antithesis of the clear declaration mandated by *Great Northern.* Summary judgment will be granted on the CFEPA claims as to the State and all Defendants in both their individual and official capacities, as this Court lacks jurisdiction over the parties based on the clear reading of the statute.

### CONCLUSION

To summarize, the Motion for Summary Judgment [Doc. No. 30] is GRANTED IN PART AND DENIED IN PART. The Title VII claims against Mak are not viable, either officially or individually. The Title VII claim may proceed against the State for only prospective, injunctive relief, if any may be proved. Monetary damages of any kind may not be awarded on a Title VII claim against the State itself. Similarly, the Section 1981 and 1983 claims may

go forward against the State, for prospective injunctive relief only, if any may be proved. No monetary damages are allowed under these statutes. Summary judgment is granted as to Plaintiff's Section 1981 and 1983 claims against the Estate of Mak, Lempicki, Melhorn, Rilling, the Fairfield County Sheriff's Department and the Sheriff's Advisory Board, in their official capacities, as each has immunity under the Eleventh Amendment. It is, however, denied as to Mak, Rilling and Melhorn acting in their individual capacities. Summary judgment as to the CFEPA claims against the State and all other Defendants is granted, as the Court lacks jurisdiction over such claims. Such claims must be brought in state court, per the statute. Finally, summary judgment is granted as to Count Nine of the First Amended Complaint, as it does not set forth a cause of action, but only seeks relief identical to that in the prayer for relief.

SO ORDERED.