**Jessie COGER, Plaintiff**

v.

**State of CONNECTICUT, Department of Administrative Services, et. al., Defendants**

**No. 3:98–CV–1593 (EBB).**

United States District Court, D. Connecticut.

March 12, 2004.

Kenneth Alan Beck, Beck & Beck, Stratford, CT, Rebecca L. Johnson, New Haven, CT, for Plaintiff.

Jane B. Emons, Loida John–Nicholson, Margaret Quilter Chapple, Maria C. Rodriguez, Michael J. Lanoue, Tammy D. Geathers, Laurie Adler, Attorney General's Office, Hartford, CT, for Defendants.

## RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

BURNS, Senior District Judge.

### INTRODUCTION

Plaintiff Jessie Coger ("Coger" or "plaintiff") brings this employment dis-

crimination action against the State of Connecticut, Department of Public Safety and Department of Administrative Services, Bureau of Selection and Training ("defendants" or "State of Connecticut") pursuant to the Civil Rights Act of 1866, as amended, 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e et seq., and the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. §§ 46a–60 et. Seq. Coger alleges that defendants discriminated against him because of his race by failing to hire him as a Connecticut State Police Officer–Trainee ("Trainee"). Defendants now move pursuant to Fed.R.Civ.P. 56 for summary judgment on all claims. For the reasons detailed below, defendants' motion is granted.

## BACKGROUND

█ The Court sets forth only those facts deemed necessary to an understanding of the issues raised in, and decision rendered on, this Motion. The facts are culled from the parties' Local Rule 56(a) Statements, affidavits, and the exhibits attached to their respective memoranda. Plaintiff is not in compliance with Local Rule 56(a), as he failed to set forth facts plaintiff contends are in dispute, as required by a party opposing a motion for summary judgment. Rule 56(a)(2) provides, in relevant part, as follows:

The papers opposing a motion for summary judgment shall include a document entitled "Local Rule 56(a)2 Statement which states in separately numbered paragraphs corresponding to the numbered paragraphs contained in the moving parties Local Rule 56(a)(1) Statement whether each of the facts asserted by the moving party is admitted or denied." The Local Rule 56(a)2 Statement must also include in a separate section

entitled "Disputed Issues of Material Fact" a list of each issue of material fact as to which it is contended there is a genuine issue to be tried.

L.R. Civ. P. 56(a)2.

Further, each 56(a)(1) & (2) Statement is to be followed by "either a specific citation to (1) the affidavit of a witness competent to testify to the facts at trial, and/or (2) evidence that would be admissible at trial." L.R. Civ. P. 56(a)3. The purpose of Rule 56 is to aid the court, by directing it to the material facts that the movant claims are undisputed and that the party opposing the motion claims are disputed. Without such statement, "the court is left to dig through a voluminous record, searching for material issues of fact without the aid of the parties." *N.S. v. Stratford Bd. of Educ.*, 97 F.Supp.2d 224, 227 (D.Conn. 2000). Accordingly, Connecticut's Local Rules specifically state that "failure to provide specific citations to evidence in the record as required by this Local Rule may result in sanctions, including…when an opponent fails to comply, an order granting the motion [for summary judgment]." L.R. Civ. P. 56(a)(3).

Plaintiff's Statement of Material Facts "Pursuant to Local Rule 9(c)[1]" merely lists the numbered paragraphs in defendants' Rule 56(a)(1) Statement that the plaintiff agrees are undisputed, and then asserts "the balance of defendant's statements are denied." [Doc. No. 88]. This one-sentence blanket statement denying more than 50 statements of material fact asserted by defendant, without citations to affidavits or exhibits which support such denials of fact, is not in compliance with the local rule. While this court could grant defendants' summary judgment motion based on plaintiff's failure to comply with the local rules, in the interests of

---

**1.** Which should be Local Rule 56(a)(2), as amended, effective August 1, 2003.

judicial fairness, this Court will consider the issues in this case and decide the case on the merits. However, all facts set forth in defendants' complying Rule 56(c)(1) statement will be deemed admitted by plaintiff for purposes of the decision on this Motion. *See e.g. Dusanenko v. Maloney,* 726 F.2d 82, 84 (2d Cir.1984) (facts set forth in the statement of undisputed facts were properly deemed admitted given opposing party's failure to file a local rule statement of disputed material facts; entry of summary judgment appropriate); *Booze v. Shawmut Bank,* 62 F.Supp.2d 593, 595 (D.Conn.1999).

The plaintiff is an African American male, who resides in Stratford, Connecticut. Plaintiff has made multiple attempts to gain employment as a Connecticut State Police Trainee, first in the spring of 1993 and subsequently in the winter of 1995. When plaintiff applied in 1993 and 1995, there were vacancies for the position and applications were actively sought for the position. As part of the selection process, applicants are required to take a written examination, an oral examination, a physical fitness and agility test, and a polygraph examination during which the applicant's social and criminal backgrounds are investigated.

The Department of Administrative Services (DAS) and Department of Public Safety (DPS) are in charge of the recruitment and administration of the examination for Trainee positions. Prior to the oral examination each candidate completes a Supplemental Background Investigation, and a pre-test self-examination booklet, which include questions regarding personal data, employment history, driving history, criminal activity, drug use, and other personal information. The polygraph examiner reviews these written responses with the candidate, using the polygraph instrument. The examiner then submits potentially disqualifying information to the Selection Management Committee, which consists of three to five sworn individuals, during which the candidate's identity or characteristics are not revealed. The committee may eliminate a candidate from further consideration or permit him or her to continue in the process.

Plaintiff first applied to become a Trainee on October 14, 1992, and passed the written, oral and physical fitness portions of Exam No. 9290500, which was administered to all applicants for the position. Plaintiff received a 64 on the written exam, and a nine out of ten on the oral exam. During his polygraph examination, plaintiff admitted use of unprescribed steroids in the 1980's, and to a series of motor vehicle violations, including misuse of license plates, operating a vehicle without insurance, and operating an unregistered vehicle. Based on his polygraph examination report, the Selection Management Committee decided to terminate Coger's application for Trainee. Captain John Leonard, the Commanding Officer of Selection and Training, wrote plaintiff a letter informing him that he would not be proceeding further in the selection process. After receiving an inquiry from Coger regarding the reasons for his rejection, Captain Leonard wrote plaintiff another letter explaining that the decision not to hire him was based on his traffic infractions and steroid use.

On March 14, 1995, Coger applied again to become a Connecticut State Trooper Trainee. Plaintiff took Exam No. 9415000, in which he received a 63 on the written exam, which is a passing score. Plaintiff failed the oral exam, however, receiving a three out of ten. The oral exam was administered by two employees of the Department of Public Safety; Sergeant Randolph Howell, an African American male, and Trooper First Class Stephan Castagli-

ulo, a white male. A Department of Administrative Services Monitor, Miriam Bassock, a white female, was also present to oversee the test administration. During the exam, plaintiff was shown a videotape of a series of four situations and asked questions concerning what he observed while watching the tape. The same questions were asked of each candidate, and model answers for each question had previously been prepared. The examiners gave plaintiff points for any correct observations he made during the test. Because he failed the oral exam, plaintiff was not given the opportunity to continue with the process and take the other examinations.

Plaintiff filed dual employment discrimination complaints with the State of Connecticut, Commission on Human Rights and Opportunities ("CHRO") and the Equal Employment Opportunity Commission ("EEOC") on April 4, 1996. Plaintiff asserts that defendants denied his applications on the basis of his race, and that the reasons provided by defendants as to why he was not hired in 1993 and 1995 were pre-textual. Plaintiff argues that white applicants with similar or worse histories of drug use or motor vehicle violations were hired, whereas he was not. He further argues that the record of his 1993 application continues to prevent him from being hired, and that his low score on the 1995 oral examination was a result of discriminatory treatment based on his race, and not an accurate reflection of his performance on the test.

On May 7, 1998, the EEOC issued a Notice Of Right to Sue, enabling him to file this action pursuant to 29 CFR 1601.28(a)(1), et seq. Plaintiff subsequently filed a complaint in federal court on August 6, 1998, alleging he was discriminated against based on his race and color, in violation of 42 U.S.C. § 1981, Title VII of the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e et seq., and the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. §§ 46a–60 et. Seq. On August 1, 2002, Judge Warren Edginton granted Defendants' Motion for Summary Judgment based on plaintiff's failure to respond to the motion. However, upon motion by plaintiff and after a hearing on the issue, Judge Edginton entered an order reopening plaintiff's case, based on the fact that plaintiff failed to respond to the earlier summary judgment motion because his previous attorney had been disbarred. In that ruling, the court also ordered that plaintiff's new counsel respond to Defendants' Motion for Summary Judgment that had been filed on June 21, 2002, previous to the judgment of dismissal. The case was subsequently transferred to this court, and Defendants' Motion for Summary Judgment is now ready for decision.

█ In plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment, plaintiff asserts a new claim of discrimination for the first time. By affidavit submitted in conjunction with his response to defendants' motion, plaintiff states that, in the midst of this lawsuit, he applied a third time for a State Trooper Trainee position. During the oral portion of the exam, when questioned as to whether he was ever party to a lawsuit, plaintiff answered yes, and explained that he sued the State Police for discrimination stemming from his application and denial for the same position in 1993 and 1995. Because plaintiff failed the oral exam, he now seeks to cite this third attempt to obtain a Trainee position as further evidence that he has been discriminated against by defendants. However, it is improper to raise new claims for the first time in submissions in opposition to a summary judgment motion. *See Beckman v. United States Postal Serv.,* 79 F.Supp.2d 394, 407 (S.D.N.Y.2000). A claim must be set forth

in the pleadings in order to give defendants fair notice of the nature of the plaintiff's claim to prepare an appropriate defense. *See* Fed.R.Civ.P. 8(a); *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). Therefore, in addressing the merits of this case, this court will not consider plaintiff's 2002 application for a Trainee position.

## LEGAL ANALYSIS

### I. The Standard of Review

In a motion for summary judgment the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). *See also Anderson v. Liberty Lobby*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment).

If the nonmoving party has failed to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof at trial, then summary judgment is appropriate. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 322–23, 106 S.Ct. 2548. *Accord, Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir.1995) (movant's burden satisfied if it can point to an absence of evidence to support an essential element of nonmoving party's claim).

The court is mandated to "resolve all ambiguities and draw all inferences in favor of the nonmoving party...." *Aldrich*

*v. Randolph Cent. Sch. Dist.*, 963 F.2d 520, 523 (2d Cir.1992), *cert. denied*, 506 U.S. 965, 113 S.Ct. 440, 121 L.Ed.2d 359 (1992). "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.1991), *cert. denied*, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117(1991). If the nonmoving party submits evidence which is "merely colorable", or is not "significantly probative," summary judgment may be granted. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. 2505. "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 247–48, 106 S.Ct. 2505 (emphasis in original).

### II. Standard as Applied:

#### A. Section 1981 and Connecticut Fair Employment Practices Act Claim

 Plaintiff failed to respond to defendants' argument that plaintiff's claims under Section 1981 and Conn. Gen.Stat. § 46a–60a et. seq., are barred by the Eleventh Amendment. On this basis alone, the Court could consider these claims abandoned. *See, e.g., Taylor v. City of New York*, 269 F.Supp.2d 68, 75 (E.D.N.Y.2003) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way."); *Bronx Chrysler Plymouth, Inc. v. Chrysler Corp.,*

212 F.Supp.2d 233, 249 (S.D.N.Y.2002) (Where plaintiff's summary judgment opposition papers "made no argument in support of [one] claim at all," the court dismissed the claim as "abandoned."). In any event, Coger's Section 1981 and Connecticut Fair Employment Practices Act claims are barred by the Eleventh Amendment.

### 1. Section 1981

■■■■ The plaintiff alleges that the State of Connecticut Departments of Public Safety and Department of Administrative Services violated his rights under 42 U.S.C. § 1981. However, "when a person's rights protected by § 1981 are violated by a state actor (as opposed to a private person), the aggrieved party has a cause of action pursuant to 42 U.S.C. § 1983, not 42 U.S.C. § 1981." *Smith v. Conn. Dep't of Corr.*, No. 3:03CV00386, 2003 WL 22834676, *2, 2003 U.S. Dist. LEXIS 21239, *3–4 (D.Conn. Nov. 25, 2003). *See also Jett v. Dallas Independent School District*, 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989) ("the express action at law provided by § 1983 for the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, provides the exclusive federal damages remedy for the violation of the rights guaranteed by Section 1981 when the claim is pressed against a state actor.") (internal quotations omitted).

■■■■ Moreover, even if the plaintiff had pled a cause of action pursuant to 42 U.S.C. § 1983, his claim would nonetheless be barred by the Eleventh Amendment because he asserts it against a state agency, as opposed to a state official in his or her individual capacity. *Id.* The Eleventh Amendment provides that "the Judicial Power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." This prohibition of suits against a State extends to suits against a State brought by its own citizens. *Edelman v. Jordan*, 415 U.S. 651, 662–63, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974); *See also Community Health Care Ass'n of New York v. Mahon*, 106 F.Supp.2d 523, 529 (S.D.N.Y.2000) (prohibition extends to suit brought on citizens' behalf by municipality against State agency).

■■■■ In order to be subject to suit in federal court, a state must expressly and unambiguously waive its Eleventh Amendment immunity, or Congress must clearly and unmistakably express its intention to abrogate the immunity in the language of the particular statute. *Port Authority Trans–Hudson Corp. v. Feeney*, 495 U.S. 299, 304–05, 110 S.Ct. 1868, 109 L.Ed.2d 264 (1990). Notably, courts have held that Congress has not abrogated the state's immunity from suit under 42 U.S.C. § 1981 or 1983. *See, e.g., Quern v. Jordan*, 440 U.S. 332, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979) (Section 1983); *Daisernia v. State of New York*, 582 F.Supp. 792, 799 (N.D.N.Y.1984) (Section 1981). Further, the State of Connecticut has not waived its sovereign immunity under those statutes. *Banerjee v. Roberts*, 641 F.Supp. 1093, 1098 (D.Conn.1986). This Eleventh Amendment bar exists whether the relief sought is legal or equitable. *Papasan v. Allain*, 478 U.S. 265, 276, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986). Accordingly, plaintiff's section 1981 claim must fail as a matter of law.[2]

**2.** While this court recognizes that Section 1983 claims for prospective injunctive relief are not barred by the Eleventh Amendment, this court refuses to construe plaintiff's ambiguous request at the end of his complaint for "declaratory and injunctive relief" as a cognizable claim for prospective injunctive

### 2. Connecticut Fair Employment Practices Act Claims

 Similarly, plaintiff's claim under the Connecticut Fair Employment Practices Act ("CFEPA") is also barred in this court by the Eleventh Amendment. This court has previously held that, while plaintiff may bring a suit to redress violations of CFEPA in Connecticut State Superior Court, as provided in Conn. Gen.Stat. § 46a–99, that provision does not provide plaintiff with the right to sue the State of Connecticut in federal court. *See Walker v. State of Connecticut*, 106 F.Supp.2d 364, 370 (D.Conn.2000) ("This Court declines Plaintiff's invitation to hold that simply because the State has consented to be sued in state court, it a fortiori must have meant to consent to federal jurisdiction also. 'It is not consonant with our dual system for the federal courts ... to read the consent to embrace federal as well as state courts' ") (citing *Great Northern Life Insurance Co. v. Read*, 322 U.S. 47, 54, 64 S.Ct. 873, 88 L.Ed. 1121 (1944)). The Eleventh Amendment bar applies regardless of whether the relief sought is for injunctive relief or damages. In *Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, 106, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984), the Supreme Court rejected a federal court claim seeking injunctive relief against state officials sued in their official capacities, on the basis of a violation of state statutory or state common-law. As the *Pennhurst* Court stated, "[i]t is difficult to think of a greater intrusion of state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law." *Id.* Accordingly, plaintiff's claims under CFEPA are barred by the Eleventh Amendment.

### B. Title VII Claims

 In contrast to Section 1981 and 1983 claims, it has long been recognized that the Eleventh Amendment bar is not applicable to suits for monetary damages for employment discrimination under Title VII of the Civil Rights Act. *Fitzpatrick v. Bitzer*, 427 U.S. 445, 452, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976) ("There is no dispute that in enacting the 1972 Amendments to Title VII to extend coverage to the States as employers, Congress exercised its power under section five of the Fourteenth Amendment."); *Yoonessi v. State University of New York*, 862 F.Supp. 1005, 1013 (W.D.N.Y.1994), *leave to appeal denied*, 56 F.3d 10 (2d Cir.1995). We therefore proceed to address the timeliness and merits of plaintiff's Title VII claim.

### 1. Statute of Limitations

 District courts may hear only those claims involving discriminatory acts that were raised before the EEOC and which occurred within 300 days of the date the EEOC charge was filed. *See* 42 U.S.C. § 2000e–5(e); *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 765 (2d Cir. 1998). To determine the timeliness of an EEOC complaint and an ensuing lawsuit, the court must identify the dates on which the alleged discriminatory acts took place. *See Delaware State College v. Ricks*, 449 U.S. 250, 256–62, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980). Coger was first denied the position of Connecticut State Trooper Trainee on November 22, 1993, yet he did not file his EEOC charge until April 4, 1996, after he unsuccessfully applied the second time for a Trainee position. Because plaintiff's first denial of a Trainee position occurred more than 300 days before he filed his EEOC charge, his Title VII claim based on such denial is time-barred under 42 U.S.C. § 2000e–5(e).

relief, as it is impossible to determine what, if any, prospective relief plaintiff seeks.

■ Plaintiff argues that his failure to be hired constitutes a continuous practice of discrimination and therefore he should be exempt from the statute of limitations requirements. It is true that "the normal statute of limitations rules under Title VII do not apply where 'employees are hired or refused employment pursuant to a continuous practice and policy of discrimination.'" *Gomes v. Avco Corp.*, 964 F.2d 1330, 1333 (2d Cir.1992) (quoting *Miller v. International Tel. & Tel. Corp.*, 755 F.2d 20, 25 (2d Cir.1985)) *cert. denied*, 474 U.S. 851, 106 S.Ct. 148, 88 L.Ed.2d 122 (1985). In such continuing discrimination cases, "the commencement of the statute of limitations period may be delayed until the last discriminatory act in furtherance of it." 755 F.2d at 25; *See also Lambert v. Genesee Hosp.*, 10 F.3d 46, 53 (2d Cir.1993) ("Under the continuing violation exception to the Title VII limitations period, if a Title VII plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone.")

Here, plaintiff asserts a "continuous pattern of discrimination...as a result of one individual's assessment, and the way the Defendant applies the decision," seemingly referring to Captain Leonard's evaluation of plaintiff during his initial application and assessment. [Memorandum of Law in Support of Plaintiff's Objection Motion for Summary Judgment at 3]. Specifically, plaintiff claims that his first denial of a state trooper position was based on his race, and that he was subsequently black listed from a position he was otherwise qualified for. Plaintiff argues that "[t]his pattern of discrimination continues as long as Defendants' file contains this information and [initial] rejection letter." *Id.* at 8.

■ Even if plaintiff has asserted triable facts with respect to whether he was discriminated against each of the times he applied for a position as a State Police Trainee, such an assertion does not qualify as a pattern or practice as required to be exempt from the statute of limitations. Plaintiff does not claim that the exam is discriminatory against Blacks on its face, or that there was a policy in place to discriminate against Blacks; he merely asserts that those administering the test discriminated against him based on his race. The Supreme Court has recently made clear that "[d]iscrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination...constitutes a separate actionable unlawful employment practice." *National Railroad Passenger Corporation v. Morgan*, 536 U.S. 101, 113, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) (internal quotation omitted). *See also Elmenayer v. ABF Freight System, Inc.*, 318 F.3d 130, 134 (2d Cir.2003). Accordingly, plaintiff does not meet the burden of proof required to fall within the "continuing violation" exception to the statute of limitations on Title VII Claims, and plaintiff's Title VII claim with respect to his first denial of a state trooper position is time barred.

2. Merits of 1995 Discrimination Claim

With respect to plaintiff's claim of discrimination for being failed on the oral portion of the 1995 examination, this court finds that plaintiff has failed to set forth a prima facie case of discrimination. Title VII of the Civil Rights Act of 1964 provides in relevant part as follows:

It shall be an unlawful employment practice for an employer (1) to fail or refuse to hire or to discharge any individual with respect to his compensation, terms, conditions, or privileges of em-

ployment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e–2(a).

For refusal to hire claims arising under Title VII, in order to establish a prima facie case of discrimination, a plaintiff must show: (1) membership in a protected class; (2) qualification for the position sought, (3) an adverse employment action (failure to hire), and (4) circumstances giving rise to an inference of discrimination. *Chudnovsky v. Prudential Sec. Inc.*, No. 98 Civ. 7753, 2000 WL 1576876, at *7, 2000 U.S. Dist. LEXIS 15401, at *7 (S.D.N.Y. Oct. 23, 2000) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Carlton v. Mystic Transp.*, 202 F.3d 129, 134 (2d Cir.2000)). The burden of proof that plaintiffs must meet to survive a summary judgment motion at the prima facie stage is "de minimis." *Dister v. Continental Group, Inc.*, 859 F.2d 1108, 1114 (2d Cir.1988). In determining whether the circumstances give rise to an inference of discrimination, the court must evaluate "whether the proffered admissible evidence shows circumstances that would be sufficient to permit a rational finder of fact to infer a discriminatory motive." *Chambers v. TRM Copy Ctrs. Corp.*, 43 F.3d 29, 38 (2d Cir.1994).

This court finds that plaintiff failed to establish a prima facie case of discrimination because he neither proved that he was qualified for the position, nor demonstrated that there were circumstances giving rise to an inference of dis-

crimination. Coger failed the oral portion of the exam in 1995, earning a decile score of 3 out of 10. Plaintiff claims that because he received a decile score of nine on the oral exam he took in 1993, his low score on the 1995 exam must be attributed to the record of his previous application and because he is Black. The only evidence plaintiff cites as support for his claim of discrimination is a letter written to the plaintiff from Doctor Martin W. Anderson, the Director of Personnel Assessment and Employment Services for the State of Connecticut, in which Anderson states that it is extremely rare for an applicant to have such a sizable difference between two oral examination scores. (Plaintiff's Exhibit C). However, plaintiff fails to cite that, in the same letter, Dr. Anderson also explains that he reviewed the records from the 1995 examination and saw no errors or problems in the scores he was given. Rather, he wrote to plaintiff explaining "you supplied a small number of correct observations in response to the questions and the board members noted that you got sidetracked with some irrelevant aspects of the videos...I have no reason to doubt the accuracy of the recorded information of the Sergeant and Veteran Trooper who evaluated you." *Id.* Plaintiff has therefore failed to show that his test was graded in a discriminatory manner and that it did not accurately reflect his performance on the examination or qualifications for the job.

Further, plaintiff failed to offer any evidence from which a rational juror could infer a discriminatory motive on the part of the State employees who administered the exam. Defendant's moving papers include affidavits regarding the procedures employed by the Department of Administrative Services in administering the oral exam portion of the selection process. Dr. Anderson's affidavit described

the process of developing and administering recruitment examinations, which are in full compliance with EEOC guidelines. (*See* Defendant's Exhibit 6). For example, the examination does not test knowledge of police procedure or laws, because of their potential discriminatory impact on protected classes. (*Id.* at 2–3). Rather, the examination tests what the department has identified as important skill sets for a police officer, such as visual observation and ability to analyze situations. Mr. Anderson also stated that in an attempt to eliminate any potential bias against protected classes by exam administrators, he standardized the test and trained monitors and examiners in standardized grading. (*Id.* at 3–4)

Dr. Pamela Libby, the Director of Personnel Assessment and Staffing, also testified regarding the administration of plaintiff's examination. (Defendant's Exhibit 3). The Board grading plaintiff's oral exam was comprised of two employees of the Department of Public Safety, Sergeant Randolph Howell, an African American male and the commanding officer of the Polygraph Unit of the Department of Public Safety, and Trooper First Class Stephan Castagliulo, a white male. A Department of Administrative Services Monitor, Miriam Bassock, a white female, was also present to oversee the test administration. *Id.* at 3. Sergeant Howell's affidavit states that, during the exam, plaintiff was shown a videotape of a series of four situations and asked questions concerning what he observed while watching the tape. (Defendant's Exhibit 4 at 1). The questions asked were prepared questions asked of each candidate. Model answers for each question had previously been prepared, and Sergeant Howell used these model answers to determine whether the plaintiff's response was correct. *Id.* at 3. According to Howell, when Coger responded with an answer which identified a fact or observation listed as a correct response, Howell gave him credit for that correct answer. Howell asserts that he recorded his corresponding scores as Coger gave responses to the questions, but that the plaintiff's responses to the questions did not have the elements which were being sought on the score sheet, and therefore he received a low score. *Id.* The examination team then compared scores at the end of the examination to ensure that Sergeant Howell and Trooper Castagliulo did not deviate by more than one point from each other on the scores given. *Id.* Therefore, there is no evidence before the court to create doubt that the normal examination procedures were not followed with respect to plaintiff's examination, and that all of the standardization mechanisms were not in place to ensure plaintiff of a bias-free evaluation.

Notably, Board Four, the same Board that examined plaintiff, passed eight of the twelve black candidates who took Examination No. 9415000. (Defendant's Exhibit 3). The Supreme Court has recognized that, in determining whether discrimination was a motivating factor for an adverse employment decision, evidence of an employer's non-discrimination can be considered as well. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 513–14, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) *cited in Pasha v. William M. Mercer Consulting, Inc.,* No. 00 Civ. 8362, 2004 WL 188077, 2004 U.S. Dist. LEXIS 1226 (S.D.N.Y. Feb. 2, 2004). Thus, after reviewing the parties' moving papers and attached affidavits and exhibits, this court finds that Coger offers no evidence other than his own conclusory affidavit that the legitimate reasons offered by defendants are a pretext for racially discriminatory motives. Plaintiff's conclusory allegations that he was scored unfairly on the test are insufficient to satisfy the requirements of Rule

56(e), and his Title VII claim must therefore fail as a matter of law.

## CONCLUSION

After a thorough review of the memoranda of law, exhibits thereto, and affidavits submitted by counsel in this case, the court finds that there exist no genuine issues of material fact herein. Therefore, Defendants' Motion for Summary Judgment [Doc. No. 69] is hereby GRANTED. The Clerk is directed to close this case.

SO ORDERED.