**Amr F. ELMENAYER, Plaintiff–Appellant,**

v.

**ABF FREIGHT SYSTEM, INC, Defendant–Appellee.**

**Docket No. 01–9253.**

United States Court of Appeals, Second Circuit.

Argued: Dec. 12, 2002.

Decided: Jan. 22, 2003.

Michael G. O'Neill, New York, N.Y., for Plaintiff–Appellant.

Paul D. Ramshaw, Washington, D.C. (Nicholas M. Inzeo, Acting Deputy General Counsel, Philip B. Sklover, Assoc. General Counsel, Vincent J. Blackwood, Asst. General Counsel, Equal Employment Opportunity Commission, Washington, D.C., on the brief), for amicus curiae EEOC in support of Plaintiff–Appellant.

Lorie E. Almon, New York, N.Y. (Charles C. Jackson, Kathryn Rose, Seyfarth Shaw, New York, N.Y., on the brief), for Defendant–Appellee.

Before: JON O. NEWMAN, KEARSE, and SACK, Circuit Judges.

JON O. NEWMAN, Circuit Judge.

This appeal primarily concerns an issue of timeliness with respect to a claim of employment discrimination under Title VII. The specific issue is whether an employer's allegedly unreasonable rejection of an employee's proposed accommodation of his religious observance requirements is a continuing violation. Amr Elmenayer appeals from the October 1, 2001, judgment of the District Court for the Eastern District of New York (John Gleeson, District Judge), dismissing on motion for summary judgment his Title VII suit against

ABF Freight System, Inc. ("ABF"). We agree with the District Court that the claim of a denial of a reasonable accommodation of religious practices is time-barred and that Elmenayer's additional claim of disparate treatment, which is timely, lacks merit. We therefore affirm.

### Background

Elmenayer is a truck driver who currently is, and during the relevant time periods was, an employee of ABF. Elmenayer holds the position of "City Driver" at ABF's Brooklyn terminal. His job responsibilities consist mainly of freight delivery and pick-up throughout New York City.

*The request to accommodate religious practices.* Elmenayer is a practicing Muslim. He asserts that one of the requirements of his faith is that he engage in weekly congregational prayers, known as Jum'ah, which are held in mosques on Fridays between the hours of 12 and 2 P.M.

Prior to March 29, 1996, Elmenayer was able to coordinate his delivery schedule with his religious commitment to pray on Friday afternoons by attending prayer sessions during his lunch hour. This was possible because his duties before that date principally involved delivering freight in a section of Queens where mosques were widely available.

On March 29, 1996, Elmenayer and other City Drivers were assigned to work in the Brooklyn terminal. This required him to work at a single location instead of driving a route. At 12:06 P.M., Elmenayer began his lunch break and left work. He traveled to a mosque for prayers, which began late. He returned to work at 2:35 P.M. He had been gone for slightly less than two and a half hours. Company rules and the relevant collective bargaining agreement restrict the duration of the lunch break to one hour.

Upon returning to work, Elmenayer alleges that he was questioned about his late return by Harry Murphy, the Station Manager of the Brooklyn terminal. When Elmenayer responded that he was a practicing Muslim and had been at prayers, Murphy said he could have· Elmenayer fired for "job abandonment." As a result of this incident, Elmenayer was suspended for two weeks without pay.

On April 10, 1996, while Elmenayer was serving his two-week suspension, he made a written request to Murphy for an accommodation that would allow him to meet his prayer obligations. He proposed that he be allowed to combine his coffee break with his lunch break on Fridays to give himself an extra fifteen minutes to attend prayers, and he offered to come in a half-hour early or leave a half-hour late if needed.

On June 13, 1996, Murphy verbally informed Elmenayer that the requested accommodation would not be granted. Instead, Murphy suggested that Elmenayer bid a night-shift schedule that would enable him to have no daytime work duties on Fridays.[1] ABF asserts that Murphy also offered Elmenayer the option of attending prayer sessions during the lunch break if he was able to do so within the allotted hour. Elmenayer claims this option was restricted by Murphy's warning that Elmenayer would be fired for being off route if he drove "one block" toward a mosque on a Friday during lunch.

---

1. Murphy first justified rejection of Elmenayer's proposal on the ground that it was bad policy to combine breaks with the lunch hour and that the company did not want to make separate rules. He later said that making the accommodation would have violated the governing local and national collective bargaining agreements.

Elmenayer never bid the night shift. He claims that although the night shift was technically biddable to him, it involved a separate job classification for a non-driving position for which he had never been trained or certified. He also claims that working nights would have violated his religious obligations and that he lacked sufficient seniority to be able to bid the night shift with certainty.

*Alleged disparate treatment.* On October 8, 1997, Elmenayer pulled a trailer out of a bay in the "loading dock". The trailer had been parked there by another driver. When Elmenayer went to the back of the truck to close the doors, he observed that a door was missing. He found it leaning against the trailer parked in the next bay. A co-worker suggested that Elmenayer should take the trailer to the mechanical shop for repairs, and he did so.

The next day, Elmenayer reported these events to Murphy. Murphy determined that, by waiting a day to report the incident, Elmenayer had violated the rule that employees must immediately report any accident. On the basis of this episode, Elmenayer was suspended for two days without pay.

Elmenayer contends that he was trained that only "accidents" need to be reported immediately and that, according to company policy, a fallen door constitutes an "incident" rather than an "accident." He further contends that his two-day suspension amounted to disparate treatment compared to discipline given other employees.

*Procedural history.* On October 16, 1997, Elmenayer filed with the Equal Employment Opportunity Commission ("EEOC") an administrative charge of discrimination alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e to 2000e–17. In the charge, Elmenayer claims that he was "denied an accommodation and ... sus-

pended and threatened with termination due to my religion, Muslim." The EEOC charge specifically referred to both the refusal to grant the requested accommodation and the suspensions arising from his returning late from lunch and his failure promptly to report the fallen trailer door. On March 11, 1998, the EEOC dismissed the charge and notified Elmenayer of his right to sue.

On June 5, 1998, Elmenayer filed a *pro se* complaint against ABF in the District Court, alleging employment discrimination based on religion in violation of Title VII.

In a Memorandum and Order entered September 24, 2001, the District Court granted the Defendant's motion for summary judgment. *Elmenayer v. ABF Freight Systems,* 98–CV–4061, 2001 WL 1152815 (E.D.N.Y. Sept.20, 2001). Judge Gleeson concluded that (a) the claim based on the suspension for the late return to work on March 29, 1996, was time-barred; (b) this claim was also deficient because the decision to punish Elmenayer was made before it was known he was a Muslim; (c) Murphy's proposal that Elmenayer work night shifts was a reasonable accommodation of his religious practices; and (d) Murphy provided an unrebutted non-discriminatory explanation for the October 1997 suspension and Elmenayer offered no evidence that any other employee was not disciplined for failure promptly to report an accident.

### Discussion

#### I. Time Bar

A Title VII claim is time-barred if the plaintiff, after filing a charge with an appropriate state or local agency, does not file a charge with the EEOC within 300 days after "the alleged unlawful employment practice." 42 U.S.C. § 2000e–5(e)(1) (2000). *See National Railroad Passenger*

*Corp. v. Morgan,* 536 U.S. 101, 122 S.Ct. 2061, 2070, 153 L.Ed.2d 106 (2002) ("*Morgan* "). Elmenayer filed his charge with the EEOC on October 16, 1997. Unlawful employment practices that occurred prior to December 20, 1996, are therefore time-barred. Elmenayer does not dispute that his complaint about the two-week suspension without pay for returning late on March 29, 1996, is time-barred. ABF does not dispute that his complaint about the two-day suspension without pay, imposed on October 9, 1997, for not promptly reporting the fallen trailer door accident is timely.

 The disputed timeliness issue concerns the rejection of Elmenayer's proposed accommodation to enable him to participate in Friday prayer sessions. This issue turns on whether that rejection, even if unlawful, is a continuing violation. If so, timeliness would be measured from the latest date when the employee was still prevented from observing his religious requirements in the way he had proposed. In that event, Elmenayer's accommodation claim would be timely because his proposed accommodation remained unaccepted up to and including the date when he filed his EEOC complaint (and still remains unaccepted). On the other hand, if rejection of an employee's proposed accommodation is not a continuing violation, timeliness would be measured from the date when the proposed accommodation was rejected. In that event, Elmenayer's accommodation claim would be time-barred because his proposal was rejected on June 13, 1996.

No decision appears to have considered whether an employer's allegedly unreasonable rejection of an employee's proposed accommodation of his religious practices is a continuing violation. However, two decisions of the Supreme Court provide considerable guidance. In *Bazemore v. Friday,* 478 U.S. 385, 106 S.Ct. 3000, 92 L.Ed.2d 315 (1986), the Court ruled that each time an employer paid an employee less than other employees because of a discriminatory reason, the employer committed a separate unlawful employment practice. In *Bazemore,* the employer's act of cutting each weekly pay check was deemed to give rise to a new claim of an unlawful employment practice. "Each week's paycheck that deliver[ed] less to a black than to a similarly situated white is a wrong actionable under Title VII . . . ." *Id.* at 395, 106 S.Ct. 3000. The clear message of *Bazemore* is that an employer performs a separate employment practice each time it takes adverse action against an employee, even if that action is simply a periodic implementation of an adverse decision previously made.

In *National Railroad Passenger Corporation v. Morgan, supra,* the Court made two rulings pertinent to our pending issue. First, the Court unanimously ruled that "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." *Morgan,* 122 S.Ct. at 2072. The Court identified "termination, failure to promote, denial of transfer, or refusal to hire," *id.* at 2073, as examples of what it meant by a "discrete discriminatory act," *id.* at 2072. Second, the Court, by a 5–4 majority, ruled that a hostile work environment claim is timely if an EEOC charge is filed within 300 days "of any act that is part of the hostile work environment." *Id.* at 2075. The Court's rationale for regarding a hostile work environment claim as, in effect, a continuing violation was that such a claim "is comprised of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Id.* at 2074.

These rulings persuade us that an employer's rejection of an employee's proposed accommodation for religious prac-

tices does not give rise to a continuing violation. Rather, the rejection is the sort of "discrete act" that must be the subject of a complaint to the EEOC within 300 days. Once the employer has rejected the proposed accommodation, no periodic implementation of that decision occurs, comparable to the weekly cutting of a payroll check in *Bazemore*. The rejection of a proposed accommodation is a single completed action when taken, quite unlike the "series of separate acts" that constitute a hostile work environment and "collectively constitute" an unlawful employment practice. *Id.* Although the *effect* of the employer's rejection continues to be felt by the employee for as long as he remains employed, that continued effect is similar to the continued effect of being denied a promotion or denied a transfer, denials that *Morgan* offered as examples of a discrete act. *Id.* at 2073.

 In its *amicus* brief supporting Elmenayer, the EEOC strives valiantly to analogize the rejection of his proposed accommodation to the periodic cutting of weekly checks in *Bazemore* by arguing that "Elmenayer experiences a recurring weekly conflict between his religious duty and his employment requirements.... [He] has a right to a reasonable accommodation each time he experiences that conflict." Brief for EEOC at 16–17. But that argument focuses on the effect on the employee, whereas the Supreme Court's analysis, both in *Bazemore* and *Morgan*, focuses on the acts of the employer. Once ABF rejected Elmenayer's proposed accommodation and offered its own proposal, it took no further action concerning his interest in attending prayer sessions. The employer's continued insistence on its lunch break rules is no different, for time-bar purposes, than an employer's continuation of an employee in a position from which he had sought promotion or transfer, although we do not decide what the effect would be if the employee renews the request for an accommodation.

Elmenayer's accommodation claim was properly rejected as time-barred.

## II. Claim of Disparate Treatment

■ Elmenayer's claim of disparate treatment concerning the October 1997 truck door episode is without merit. The District Court properly concluded that Elmenayer had produced insufficient evidence from which a fact-finder could infer that Murphy's characterization of the episode as an "accident" requiring prompt reporting was a pretext for discrimination or that he had been treated differently from other employees in similar circumstances. Sufficient evidence of disparate treatment might have tended to prove pretext.

### Conclusion

The judgment of the District Court is affirmed.