Joshua HAGHPASSAND,
Plaintiff–Appellant,

v.

REUTERS AMERICA INC.,
Defendant–Appellee.

No. 04–2463.

United States Court of Appeals,
Second Circuit.

Jan. 28, 2005.

Joshua Haghpassand, New York, New York, for Appellant, pro se.

Felice B. Ekelman, Jackson Lewis LLP, New York, New York, for Appellee.

PRESENT: RAGGI, WESLEY, Circuit Judges, and DRONEY, District Judge.[*]

[*] The Honorable Christopher F. Droney, of the United States District Court for the District of

## SUMMARY ORDER

Appellant Joshua Haghpassand, proceeding pro se, sued appellee Reuters America Inc. (named in the complaint as "Reuters Consulting Group," and referred to hereafter simply as "Reuters"), for discriminatory discharge from employment based on race and national origin in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e—2000e-17, and based on age in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621—634. The district court dismissed these claims as time-barred, *see Haghpassand v. Reuters Consulting Group*, No. 03 Civ. 5686, 2004 WL 594576, at *1 (S.D.N.Y. Mar.25, 2004), a decision that we review de novo, *see Zerilli–Edelglass v. N.Y. City Transit Auth.*, 333 F.3d 74, 79 (2d Cir.2003). In so doing, we assume the parties' familiarity with the facts and the procedural history of this case, which we reference only as necessary to explain our disposition.[1]

Title VII and ADEA plaintiffs who file a discrimination charge with a state agency must do so within 300 days after the allegedly unlawful employment practice. *See* 29 U.S.C. §§ 626(d)(2), 633(b); 42 U.S.C. § 2000e–5(e)(1). Haghpassand conceded at oral argument that he filed his discrimination charge with the New York Division of Human Rights on June 21, 2002, 407 days after May 10, 2001, the date Reuters supervisors first raised the possibility of Haghpassand's termination, and 303 days after August 22, 2001, the date on which Haghpassand's refusal to sign a formal resignation prompted his immediate supervisor to escort him out of the workplace and to advise him that his formal termination would take effect within a matter of days and that he could not return to the job site.

Haghpassand asserts that the district court erred in relying on the August 22, 2001 date in calculating the time within which he had to file his administrative claim. He submits that the 300–day period did not begin to run until August 31, 2001, when Reuters confirmed his termination in writing. Alternatively, he argues that Reuters's refusal to admit him to his former workplace on or after August 23, 2001 evidenced a continuing hostile work environment that extended his filing time. Finally, Haghpassand claims that he was entitled to some equitable tolling of the 300–day filing period in light of the tragic events of September 11, 2001. We find none of these arguments convincing.

### 1. Notice of Discharge

█ The law is clear that the 300–day filing period for claims of discriminatory discharge under Title VII and the ADEA begins on the date "when the employee receives a definite notice of the termination, not upon his discharge." *Miller v. Int'l Tel. & Tel. Corp.*, 755 F.2d 20, 23 (2d Cir.1985) (citing *Delaware State Coll. v. Ricks*, 449 U.S. 250, 258, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980)). We need not here decide whether the events of May 10, 2001, constituted sufficient notice of discharge to trigger the 300–day period. Like the district court, we conclude that the events of August 22, 2001, as recounted by Haghpassand himself in his pleadings, constituted definite notice to Haghpassand that he was fired, with formal termination to take place that day or soon thereafter. The fact that Reuters subsequently confirmed Haghpas-

---

Connecticut, sitting by designation.

1. Reuters contends that we should dismiss Haghpassand's appeal because he failed to file his brief within the deadline set in this court's original scheduling order. Because Haghpassand's brief was filed within the deadline established by a second court order, we decline to dismiss the appeal.

sand's termination by letter does not alter the fact that plaintiff had actual notice of this employment action on August 22, more than 300 days before his administrative filing.

### 2. *Continuing Violation*

■ A plaintiff who alleges a discriminatorily hostile work environment need plead only one hostile act by defendant within the 300–day filing period to state a timely continuing violation claim. *Cf. Petrosino v. Bell Atlantic*, 385 F.3d 210, 220 (2d Cir.2004) (discussing timeliness of sexual harassment claim under Title VII). Seeking to recast his untimely discharge claim as a timely hostile work environment claim, Haghpassand points to Reuters's refusal to admit him to his former workplace on or after August 23, 2001, as a discriminatorily hostile act. Haghpassand's argument is fundamentally flawed. An employee who has been notified of his discharge and ordered to leave the employer's premises no longer has any rights with respect to the work site environment. *Cf. Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 70 (2d Cir.2000) (holding that plaintiffs whose notices of resignation had not yet taken effect could pursue a hostile work environment claim in part because "even if the plaintiffs had decided to leave . . . , they were still a part of the work environment until the date they actually left"). The employee can sue for wrongful discharge, but his employer's subsequent refusal to admit him to the work site is simply the continuing effect of the discharge decision, not a continuing hostile environment violation that extends a Title VII or ADEA claim for purposes of calculating the 300–day filing period. *See generally Elmenayer v. ABF Freight Sys., Inc.*, 318 F.3d 130, 134–35 (2d Cir.2003).

### 3. *Equitable Tolling*

■ Because the administrative filing period for Title VII and ADEA actions is not jurisdictional, but more akin to a statute of limitations, equitable tolling is permissible, but only "in rare and exceptional circumstances, in which a party is prevented in some extraordinary way from exercising his rights." *Zerilli–Edelglass v. N.Y. City Transit Auth.*, 333 F.3d at 80 (internal quotation marks, alterations, and citations omitted). Haghpassand submits that the district court erred in refusing to apply equitable tolling to its evaluation of the timeliness of his claims. We review this claim deferentially for abuse of discretion. *See id.* at 81.

The United States District Court for the Southern District of New York responded to the events of September 11, 2001, by tolling or extending some filing deadlines falling in the weeks and months immediately following that tragedy. *See Varone v. City of New York*, No. 02 Civ. 1089, 2003 WL 21787475, at *1 (S.D.N.Y., Aug. 4, 2003) (granting equitable tolling for EEOC charge filed in December 2001 in light of destruction of EEOC offices at World Trade Center); *see also Buckley v. Doha Bank Ltd.*, No. 01 Civ. 8865, 2002 WL 1751372, at *2 (S.D.N.Y. July 29, 2002) (noting Chief Judge Mukasey's extension of all filing deadlines in the S.D.N.Y. falling between September 10, 2001, and September 26, 2001, to the latter date). In this case, however, the district court determined that no tolling was warranted because Haghpassand had nine months after September 11, 2001, to meet the administrative filing deadline, and he failed to pursue his claims diligently during that period. *See Haghpassand v. Reuters Consulting Group*, 2004 WL 594576, at *5. We conclude that this decision was reasonable and well within the district court's discretion.

For the reasons stated, the judgment of the district court, entered on March 29, 2004, granting defendant's motion to dismiss plaintiff's claims as time-barred, is hereby AFFIRMED.