Linda A. LEE, Plaintiff,

v.

**DEPARTMENT OF CHILDREN AND FAMILIES, and Joette Katz in her official capacity, Defendants.**

Case No. 3:11cv1910(AWT).

United States District Court, D. Connecticut.

April 15, 2013.

Francis H. Morrison, III, Nicholas Andrew Geiger, Axinn, Veltrop & Harkrider LLP, Hartford, CT, Lauren S. Albert, Aaron J. Feigenbaum, Axinn, Veltrop & Harkrider, LLP, New York, NY, for Plaintiff.

Peter M. Haberlandt, Office of the Attorney General, Hartford, CT, for Defendants.

### *RULING ON MOTION TO DISMISS*

ALVIN W. THOMPSON, District Judge.

Plaintiff Linda Lee ("Lee") asserts claims against the Connecticut Department of Children and Families ("DCF") and Joette Katz ("Katz") in her official capacity as Commissioner of DCF, for violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA"); the Rehabilitation Act, 29 U.S.C. § 791 *et seq.;* the Connecticut Fair Employment Practices Act, Conn. Gen.Stat. § 46a–60 ("CFEPA"); and the Connecticut Workers' Compensation Retaliation Act, Conn. Gen.Stat. § 31–290a ("CWCRA"). The defendants have moved to dismiss most of the claims set forth in the Amended Complaint (Doc. No. 40) (the "Complaint") pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Their motion is being granted in part and denied in part.

### I. FACTUAL ALLEGATIONS

"The complaint, which [the court] must accept as true for purposes of testing its sufficiency, alleges the following circumstances." *Monsky v. Moraghan,* 127 F.3d 243, 244 (2d Cir.1997).

Around December 1992, Lee began working for DCF, where she was originally responsible for working with victims of child abuse. Approximately six years later, she was promoted to the position of Pupil Services Specialist. Around 2001, Lee—along most of her department—was transferred to the Connecticut Juvenile Training School ("CJTS") in Middletown, Connecticut.

Shortly after the transfer to CJTS, Lee "began to develop medical problems including, but not limited to, respiratory problems, reoccurring bronchitis, short-term memory loss, cognitive and neurological impairments, and skin rashes, for which she sought medical treatment." (Compl. ¶ 13.) She was diagnosed as having a number of medical issues, including allergic rhinitis, chronic sinusitis and asthma, which affects several major life activities including breathing. Lee "was told by her doctor that her disabilities were attributed to mold which was present at her workplace." (Compl. ¶ 14.) Around January 20, 2004, Lee took a medical leave of absence from work due to the worsening of her medical condition. Around April 14, 2004, Lee filed a Worker's Compensation claim based on her medical condition.

"Prior to 2004, [Lee] had positive performance reviews and yearly raises. She did not receive reviews or raises once she went on medical leave." (Compl. ¶ 32.)

When Lee returned to DCF in or around October 2004 for a 90–day temporary assignment, she was assigned "solely paperwork rather than the face-to-face social work she had done previously." (Compl. ¶ 19.) Riverview Hospital, where Lee was placed for this temporary assignment, had a history of mold and the defendants knowingly placed her in an environment that exacerbated her medical condition. After a few days working at Riverview Hospital, Lee had an allergic reaction that required a visit to the emergency room. Due to the allergic reaction, Lee missed approximately 15 days of the 90–day assignment.

The plaintiff was then out of work until after April 2008. In or around April 2008, the defendants offered Lee employment at DCF's office at 55 W. Main Street in Meriden, Connecticut ("55 W. Main"). Lee informed the defendants "that 55 W. Main did not accommodate her disability because an investigation conducted in or about 2006 revealed that it contained levels of mold which her doctor opined would not make it a medically safe working environment for someone of her sensitivity. [Lee] then requested [the defendants] to accommodate her by offering her a position at a location which was medically safe. [The defendants] refused this request for accommodation." (Compl. ¶ 24.) On or about May 5, 2008, Lee began work at 55 W. Main. Within two days, she suffered an allergic reaction that required medical attention. "Pursuant to her doctor's recommendation, [Lee] went back on medical leave on or about May 7, 2008." (Compl. ¶ 25.) Around November 12, 2008, Lee attempted to return to work at 55 W. Main, but again experienced an allergic reaction that prompted her to seek medical treatment and again follow her doctor's recommendation to take medical leave.

Lee kept the defendants "aware of her medical condition and provided up-to-date medical documentation, including doctor's notes." (Compl. ¶ 27.)

Around February 19, 2009, the defendants gave Lee "notice that her employment would be terminated due to alleged neglect of duty and attendance effective on or about March 5, 2009." (Compl. ¶ 28.) Although the defendants had a policy that all employees would be placed on a 90–day probationary period prior to termination, they did not follow that policy with Lee. In 21 years as an employee of the State of

Connecticut, Lee had never been disciplined for neglect of duty or attendance.

On or about June 12, 2009, Lee filed charges of discrimination with the U.S. Equal Employment Opportunity Commission, and she timely filed suit upon receipt of a right to sue letter.

## II. LEGAL STANDARD

"[T]he standards for reviewing dismissals granted under 12(b)(1) and 12(b)(6) are identical." *Moore v. PaineWebber Inc.*, 189 F.3d 165, 169 n. 3 (2d Cir.1999). When deciding a motion to dismiss under Rule 12(b)(6), the court must accept as true all factual allegations in the complaint and must draw inferences in a light most favorable to the plaintiff. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). Although a complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), *citing Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (on a motion to dismiss, courts "are not bound to accept as true a legal conclusion couched as a factual allegation"). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555, 127 S.Ct. 1955 (citations omitted). However, the plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 570, 127 S.Ct. 1955. "The function of a motion to dismiss is 'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.'" *Mytych v. May Dept. Stores Co.*, 34 F.Supp.2d 130, 131 (D.Conn.1999) (quoting *Ryder Energy Distribution v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir.1984)). "The issue on a motion to dismiss is not whether the plaintiff will prevail, but whether the plaintiff is entitled to offer evidence to support his claims." *United States v. Yale New Haven Hosp.*, 727 F.Supp. 784, 786 (D.Conn.1990) (citing *Scheuer*, 416 U.S. at 232, 94 S.Ct. 1683).

## III. DISCUSSION

### A. Eleventh Amendment Immunity and ADA Title I Claims (Counts I and II)

The defendants move under Rule 12(b)(1) to dismiss the plaintiff's ADA Title I claims in Counts I and II, except to the extent the plaintiff seeks prospective injunctive relief against Katz, for lack of subject matter jurisdiction. The defendants contend that sovereign immunity bars such claims against them.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. "The Supreme Court has consistently held that the federal courts lack jurisdiction not only over suits against a state brought by citizens of other states, as the literal language of the Amendment provides, but also over suits against such states brought by their own citizens." *Dwyer v. Regan*, 777 F.2d 825, 835 (2d Cir.1985) (citations omitted).

■ The Eleventh Amendment does not bar a claim where the state has consented to be sued or Congress has abrogated the states' Eleventh Amendment immunity. *See Kimel v. Florida Bd. of Regents,* 528 U.S. 62, 73, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000) (noting that "the Constitution does not provide for federal jurisdiction over suits against nonconsenting States" and that Congress may abrogate states' Eleventh Amendment immunity by unequivocally expressing an intent to abrogate that immunity pursuant to a valid grant of constitutional authority). Connecticut has not waived its immunity from suit under Title I of the ADA. Furthermore, Congress did not validly abrogate states' Eleventh Amendment immunity from suit under Title I. *See Bd. of Trustees of Univ. of Alabama v. Garrett,* 531 U.S. 356, 360, 121 S.Ct. 955, 148 L.Ed.2d 866 (2001) ("We decide here whether employees of the State of Alabama may recover money damages by reason of the State's failure to comply with the provisions of Title I of the [ADA]. We hold that such suits are barred by the Eleventh Amendment."); *id* at 368–74 (examining whether Congress abrogated states' Eleventh Amendment immunity under § 5 of the Fourteenth Amendment when enacting Title I, and finding that it did not).

The plaintiff argues that her Title I claims are not barred by the Eleventh Amendment so long as she can demonstrate discriminatory animus. She bases this argument on *Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn,* which held that ADA Title II claims may be "maintained against a state if the plaintiff can establish that the Title II violation was motivated by either discriminatory animus or ill will due to disability." 280 F.3d 98, 112 (2d Cir.2001). However, this argument is unpersuasive because *Garcia* pertains only to claims brought under Title II, and not Title I, of the ADA, *see Garcia,* 280 F.3d at 110 n. 1 (distinguishing ADA Titles I and II), and *Garrett* held that there is no abrogation by Title I.

The Supreme Court has held that Title I does not abrogate Eleventh Amendment immunity for money damages because "[t]he legislative record of the ADA ... simply fails to show that Congress did in fact identify a pattern of irrational state discrimination in employment against the disabled," as is required for Congress to abrogate Eleventh Amendment sovereign immunity and exercise its enforcement powers under Section 5 of the Fourteenth Amendment.

*Reddick v. S. Connecticut State Univ.,* 3:10CV1118(JBA), 2011 WL 1833288, at *1 (D.Conn. May 12, 2011) (quoting *Garrett,* 531 U.S. at 368, 121 S.Ct. 955); *see also United States v. Georgia,* 546 U.S. 151, 158, 126 S.Ct. 877, 163 L.Ed.2d 650 (2006) (holding that Title II validly abrogates the Eleventh Amendment "insofar as Title II creates a private cause of action for damages against the States for conduct that *actually* violates the Fourteenth Amendment" without disturbing *Garrett's* broader holding (emphasis in. original)). Thus, the Eleventh Amendment applies to the plaintiff's claims under ADA Title I.

■ The scope of the Eleventh Amendment bar depends on the identity of the defendant. For suits against states or their agencies, "[t]his jurisdictional bar applies regardless of the nature of the relief sought." *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984); *see also Dube v. State Univ. of New York,* 900 F.2d 587, 594 (2d Cir.1990) ("This bar exists whether the relief sought is legal or equitable") (quoting *Papasan v. Allain,* 478 U.S. 265, 276, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)). Therefore, the ADA Title I claims against DCF are being dismissed in their entirety.

■ For suits against individuals in their official capacities, the applicability of the Eleventh Amendment bar depends on

the form of relief sought. Money damages cannot be recovered from state officers sued in their official capacities. *See, e.g., Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) ("a suit against a state official in his or her official capacity is not a suit against an official but rather is a suit against the official's office"); *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) ("a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment"); *Goonewardena v. New York*, 475 F.Supp.2d 310, 329 (S.D.N.Y.2007) ("sovereign immunity also extends to bar claims for monetary damages brought against state officers sued under section 1983 in their official capacities"). Likewise, "judgments against state officers declaring that they violated federal law in the past" are not permitted. *Puerto Rico Aqueduct and Sewer Auth. v. Metcalf & Eddy*, 506 U.S. 139, 146, 113 S.Ct. 684, 121 L.Ed.2d 605 (1993) (citing *Green v. Mansour*, 474 U.S. 64, 73, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985)). Because the only declaratory relief sought in this case is a declaration that past conduct was unlawful (*see* Compl. 10 (asking the court to "declare that the employment practices complained of in th[e] Complaint are unlawful")), declaratory relief against Katz is not available. However, prospective injunctive relief is available against individuals being sued in their official capacities. *See Edelman*, 415 U.S. at 663, 94 S.Ct. 1347; *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). The plaintiff is seeking prospective injunctive relief (*see* Compl. 10 (asking the court to "order that the Defendants reinstate Plaintiff in her prior position" and accommodate her disability)), and the defendants have not moved for dismissal on Eleventh Amendment grounds of the Title I claims to the extent they seek prospective relief against Katz (*see* Defts.' Mem. Supp. Mot. Dismiss (Doc. No. 44–1) at 2–3, 9). Therefore, the ADA Title I claims against Katz are being dismissed except to the extent they seek prospective injunctive relief.

**B. Eleventh Amendment Immunity and State Law Claims (Counts IV and V)**

█ The defendants argue that Counts IV and V, which are state law claims under the CFEPA and the CWCRA, should be dismissed in their entirety as to both defendants under Rule 12(b)(1). In particular, the defendants contend that they are immune from suit on these claims pursuant to the Eleventh Amendment.

█ In her opposition to the motion to dismiss, the plaintiff asked the court to certify to the Supreme Court of Connecticut the questions of whether Connecticut has consented to be sued in federal district court for violations of the CFEPA and the CWCRA. The court declines to do so because whether a state has consented to be sued (i.e., waived its immunity from suit) in federal court is a question of federal constitutional law, not a question of state law. *See, e.g., Lapides v. Bd. of Regents of Univ. System of Ga.*, 535 U.S. 613, 623, 122 S.Ct. 1640, 152 L.Ed.2d 806 ("whether a particular set of state laws, rules, or activities amounts to a waiver of the State's Eleventh Amendment immunity is a question of federal law"); *Elwell v. Okla. ex rel. Bd. of Regents of Univ. of Okla.*, 693 F.3d 1303, 1315 (10th Cir.2012) (holding that Oklahoma cases were immaterial to the question of whether the state had waived its sovereign immunity because that question "is one of federal law").[1]

---

1. The court recognizes that the Connecticut Supreme Court held that " § 46a–100 represents an unambiguous waiver of sovereign immunity, authorizing actions against the state for alleged discriminatory employment practices in violation of § 46a–60." *Lyon v.*

 Under federal law, "[a] sovereign's immunity may be waived, and the Court consistently has held that a State may consent to suit against it in federal court. [The Supreme Court has] insisted, however, that the State's consent be unequivocally expressed." *Pennhurst State Sch. & Hosp.*, 465 U.S. at 99, 104 S.Ct. 900 (internal quotations omitted); *see also Atascadero State Hosp. v. Scanlon,* 473 U.S. 234, 239–40, 105 S.Ct. 3142, 87 L.Ed.2d 171 (1985) ("A State will be deemed to have waived its immunity only where stated by the most express language or by such overwhelming implication from the text as will leave no room for any other reasonable construction." (internal quotation marks and brackets omitted)). Moreover, "a State does not consent to suit in federal court merely by consenting to suit in the courts of its own creation." *Coll. Sav. Bank v. Florida Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 676, 119 S.Ct. 2219, 144 L.Ed.2d 605 (1999) (citing *Smith v. Reeves,* 178 U.S. 436, 441–45, 20 S.Ct. 919, 44 L.Ed. 1140 (1900)); *see also Port Auth. Trans–Hudson Corp. v. Feeney*, 495 U.S. 299, 306, 110 S.Ct. 1868, 109 L.Ed.2d 264 (1990) ("[a] State does not waive its Eleventh Amendment immunity by consenting to suit only in its own courts"); *Atascadero State Hosp.*, 473 U.S. at 241, 105 S.Ct. 3142 ("in order for a state statute or constitutional provision to constitute a waiver of Eleventh Amendment immunity, it must specify the State's intention to subject itself to suit in *federal court* " (emphasis in original)).

As discussed in *Brown v. Connecticut,*

The provision of Connecticut law that creates the cause of action for violations of the CFEPA states that:

Any person who has timely filed a complaint with the Commission on Human Rights and Opportunities in accordance with section 46a–82 and who has obtained a release from the commission ..., may also bring an action in the superior court for the judicial district in which the discriminatory practice is alleged to have occurred or in which the respondent transacts business, except any action involving a state agency or official may be brought in the superior court for the judicial district of Hartford.

Conn. Gen.Stat. § 46a–100 (emphasis added). Section 46a–82, referenced above, permits "[a]ny person claiming to be aggrieved by an alleged discriminatory practice"—including violations of the CFEPA, Conn. Gen.Stat. § 46a–60—to file a complaint with the CHRO.

3:08CV1478(MRK), 2010 WL 2220580, at *13 (D.Conn. May 27, 2010). "Given the text of § 46a–100—which only contemplates suits being brought in Connecticut's 'superior court'—the Court has a difficult time concluding that the CFEPA constitutes the type of 'unequivocal' waiver of immunity for suits filed in federal court that *Pennhurst* requires." *Id.* at *14; *see also Wagner v. Conn. Dept. of Corr.*, 599 F.Supp.2d 229, 237 (D.Conn.2009) ("Under CFEPA, the State has waived its immunity only as to cases brought in the Connecticut Superior Court."); *Vaden v. Conn.,* 557 F.Supp.2d 279, 289 (D.Conn.2008); *Garris v. Dep't of Corrections*, 170 F.Supp.2d 182, 187 (D.Conn.2001); *Lyon v. Jones, et al.,* 168 F.Supp.2d 1, 5 (D.Conn. 2001); *Walker v. Conn.,* 106 F.Supp.2d 364, 370 (D.Conn.2000).

---

*Jones,* 291 Conn. 384, 397, 968 A.2d 416 (2009). However, *Lyon* was a state court case and did not address the issue of whether § 46a–100 constituted a waiver of immunity

to suit in *federal* court. *See Brown v. Conn.,* 3:08CV1478(MRK), 2010 WL 2220580, at *13 (D.Conn. May 27, 2010).

The CWCRA provides, in pertinent part, that any employee who is discharged or discriminated against for filing a claim for exercising his rights under the CWCRA by an employer who is covered by the statute:

> may either: (1)[b]ring a civil action *in the superior court* for the judicial district where the employer has its principal office . . . .; or (2) file a complaint with the chairman of the Workers' Compensation Commission alleging violation of the provisions of subsection (a) of this section. . . .

Conn. Gen.Stat. § 31–290a(b) (emphasis added). This provision contemplates only an action brought in state court or a complaint filed with a state commission; it does not explicitly contemplate suit in federal court. Thus, like the CFEPA, the CWCRA does not contain an unequivocal waiver of immunity to suit in federal court.

Therefore, Counts IV and V are being dismissed in their entirety.[2]

### C. ADA Title II Claims (Counts I and II)

■ The defendants move under Rule 12(b)(6) to dismiss plaintiff's ADA Title II[3] claims in Counts I and II. The defendants contend that Title II does not provide a cause of action for employment discrimination. The plaintiff argues that a Title II ADA claim may be brought regarding employment discrimination by a state.

The Second Circuit recently "conclude[d] that the [ADA] unambiguously limits employment discrimination claims to Title I. A public employee may not bring a Title II claim against his or her employer, at least when the defendant employer employs fifteen or more employees." *Mary Jo C. v. New York State & Local Ret. Sys.*, 11–2215, 707 F.3d 144, 2013 WL 322879 at *21 (2d Cir. Jan. 29, 2013). The complaint alleges that DCF, the employer in this case, "employs more than 15 people." (Compl. ¶ 5.) Therefore, the plaintiff's claims under ADA Title II are being dismissed.

### D. Timeliness of Federal Claims Regarding Pre-Termination Conduct (Counts I, II, and III)

The defendants contend that the plaintiff's federal disability claims (i.e., the claims made in Counts I, II, and III) are time-barred to the extent they are based on the defendants' conduct prior to the termination of the plaintiff's employment with DCF. Because the ADA Title II claims have been dismissed in their entirety on other grounds, the court considers this argument only with respect to the ADA Title I and Rehabilitation Act claims.

The plaintiff makes the following factual allegations that are relevant to her ADA Title I and Rehabilitation Act claims:

- In or about October 2004, Lee returned to work for DCF on a 90–day temporary assignment, during which she was assigned paperwork rather than her normal duties. During this temporary assignment, the defendants knowingly placed Lee in an environment that would exacerbate her medical condition. After the 90–day assignment concluded, the defendants did not offer Lee a new assign-

---

**2.** Because Count V is being dismissed on the basis of sovereign immunity, the court does not reach the defendants' argument that the claim in Count V is precluded by the plaintiff's previous filing of the same claim with the state Worker's Compensation Commission.

**3.** Lee asserts that the defendants violated 42 U.S.C. § 12132, which provides that "[s]ubject to the provisions of this subchapter, no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

ment or location, and Lee was forced to take a medical leave of absence. (*See* Compl. ¶¶ 18–22.)

- On or about April 10, 2008, the defendants offered Lee a position at 55 W. Main. Lee informed the defendants that 55 W. Main did not accommodate her disability and requested accommodation in the form of a position at a medically safe location. Defendants refused this request and Lee accepted the position at 55 W. Main, where she began to work on or about May 5, 2008. A few days later, Lee went back on medical leave due to an allergic reaction. On or about November 12, 2008, Lee attempted to return to work at 55 W. Main, and then again went on medical leave after experiencing an allergic reaction. (*See id.* at ¶¶ 24–26.)
- "Prior to 2004, Plaintiff had positive performance reviews and yearly raises. She did not receive reviews or raises once she went on medical leave." (*Id.* at ¶ 32.)
- On or about February 19, 2009, the defendants notified Lee that her employment with DCF would be terminated for alleged neglect of duty and attendance effective on or about March 5, 2009. Contrary to DCF policy, the defendants did not place Lee on a 90–day probationary period prior to termination. (*See id.* at ¶¶ 28, 30.)

## 1. ADA Title I (Counts I and II)

There is no dispute between the parties as to the applicable time bar for the ADA Title I claims—namely, that a charge must be filed with the U.S. Equal Employment Opportunity Commission ("EEOC") within

180 days of the alleged unlawful employment action, unless the claimant initially institutes proceedings with a state or local employment agency, in which case the claimant has 300 days. *See* 42 U.S.C. § 12117 (incorporating the procedures set forth in 42 U.S.C. § 2000e–5(e)(1) into the ADA Title I). No proceedings instituted with a state or local employment agency are alleged in the Complaint. According to the Complaint, the plaintiff filed a charge of discrimination with the EEOC on or about June 12, 2009. Based on the foregoing, the parties agree that the plaintiff's Title I claims with respect to the termination of her employment by DCF were timely filed. However, they disagree about whether the Title I claims are timely with respect to the defendants' conduct prior to the termination of employment.

■ Whether the Title I claims are time-barred with respect to the pre-termination conduct depends on whether the defendants' alleged conduct was discrete or continuous. In *National R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002), the Supreme Court addressed discrete versus continuing discriminatory conduct in the context of an action brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*[4] The Court held that

> discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act.... The existence of past acts and the employee's prior knowledge of their occurrence, however, does not bar employees from filing charges about related discrete acts so long as the acts are independently dis-

---

**4.** 42 U.S.C. § 2000e applies to ADA Title I claims, as well as to Title VII claims. *See* 42 U.S.C. § 12117.

criminatory and charges addressing those acts are themselves timely filed. *Morgan,* 536 U.S. at 113, 122 S.Ct. 2061 (internal citation omitted). The Court explained that "a discrete retaliatory or discriminatory act 'occurred' on the day that it 'happened.'" *Id.* at 110, 122 S.Ct. 2061. Examples of discrete acts include "termination, failure to promote, denial of transfer, or refusal to hire." *Id.* at 114, 122 S.Ct. 2061. In contrast to discrete acts, a hostile work environment claim, while "composed of a series of separate acts," "encompasses a single unlawful employment practice." *Id.* at 117, 122 S.Ct. 2061. For such a continuing violation, only part of the alleged conduct needs to fall within the time period during which a claim can be timely filed. *See id.* at 118, 122 S.Ct. 2061.

The Second Circuit classified "an employer's rejection of an employee's proposed accommodation for religious practices" as a discrete act, rather than a continuing violation, because "[o]nce the employer has rejected the proposed accommodation, no periodic implementation of that decision occurs." *Elmenayer v. ABF Freight System, Inc.,* 318 F.3d 130, 134–35 (2d Cir.2003). The Second Circuit also noted that the Supreme Court's analysis in *Morgan* and *Bazemore v. Friday,* 478 U.S. 385, 106 S.Ct. 3000, 92 L.Ed.2d 315 (1986) (holding that each time an employer paid an employee less than other employees for a discriminatory reason constituted a separate unlawful employment practice), focused on the employer's conduct rather than the effect of that conduct on the employee. *Id.* at 135, 106 S.Ct. 3000.

██ Under this rubric, the plaintiff has not alleged a continuing violation by the defendants, but rather has alleged only a series of discrete acts. The conduct relating to the 2004 90–day temporary assignment and the 2008 placement at 55 W.

Main constitute discrete acts as opposed to a continuing violation culminating in the plaintiff's termination as a DCF employee. *See Elmenayer,* 318 F.3d at 134–35 (holding that denial of proposed accommodation for religious practices is a discrete act); *Morgan,* 536 U.S. at 108–09, 122 S.Ct. 2061 (describing discrete retaliatory and discriminatory conduct as occurring on a specific day); *see also Chin v. Port Auth. of New Jersey,* 685 F.3d 135, 155–58 (2d Cir. 2012) (holding that a failure to promote is a discrete act even when plaintiffs make a disparate impact claim); *Tobin v. Liberty Mutual Ins. Co.,* 553 F.3d 121, 132–33 (1st Cir.2009) (holding that denials of repeated requests for accommodation are each discrete acts); *Davis v. N.Y. State Office of Mental Health,* 05CV5599(ARR), 2009 WL 5178440, at *6 (E.D.N.Y. Dec. 31, 2009) (declining to apply the continuing violation doctrine to claims of failure to accommodate and observing that "[i]t appears that the continuing violation doctrine applies only to cases of alleged hostile work environment or claims which involve a series of acts necessary to comprise the alleged discriminatory action"); *Baker v. CSX Transp., Inc.,* 546 F.Supp.2d 90, 95–97 (W.D.N.Y.2008) (finding that a performance evaluation, denial of request for accommodation, and displacement of an employee from a job constituted discrete acts); *M.K. ex rel. Mrs. K v. Sergi,* 554 F.Supp.2d 175, 193 n. 10 (D.Conn.2008) (finding that three alleged incidents of retaliation did not constitute a continuing course of conduct).

██ Also, the allegation that the plaintiff received positive performance reviews and annual raises prior to 2004, but neither reviews nor raises after going on medical leave, (Compl. ¶ 32) does not create a continuing violation. "The clear message of *Bazemore [v. Friday,* 478 U.S. 385, 106 S.Ct. 3000, 92 L.Ed.2d 315 (1986),] is that an employer performs a separate employment practice each time it takes

adverse action against an employee, even if that action is simply a periodic implementation of an adverse decision previously made." *Elmenayer*, 318 F.3d at 134.[5] Thus, assuming *arguendo* that the plaintiff could establish a claim based on the defendants' alleged failure to provide reviews or raises, each failure to give a raise or provide a performance review would be a discrete act.

Therefore, the Title I claims are being dismissed to the extent they concern conduct alleged to have taken place more than 180 days prior to the date the plaintiff filed the charge of discrimination with the EEOC..

### 2. Rehabilitation Act (Count III)

▇▇▇▇ The parties agree that there is a three-year statute of limitations with respect to the Rehabilitation Act claims. "Where a federal statute is silent with respect to the applicable limitations period, courts apply the most appropriate or analogous state statute of limitations." *M.D. v. Southington Bd. of Educ.*, 334 F.3d 217, 221–22 (2d Cir.2003) (internal quotation marks omitted). In Connecticut, the three-year statute of limitations from Conn. Gen.Stat. § 52–577 is applied to Rehabilitation Act claims. *Id.* at 224 (holding that Conn. Gen.Stat. § 52–277 applies to Rehabilitation Act claims). The parties agree that, because the plaintiff's original complaint was filed on December 9, 2011, the plaintiff's Rehabilitation Act claim with respect to the termination of her employment was timely filed. They disagree as to whether her Rehabilitation Act claim is time-barred to the extent it arises out of alleged conduct prior to the termination.

▇▇▇▇ With respect to this issue, the defendants rely on *Morgan* and related federal cases, while the plaintiff asserts that Connecticut law on tolling applies. "[A]lthough federal courts do not borrow state rules governing the accrual of claims" when they borrow state statute of limitations, "they do borrow state equitable tolling rules." *M.D. v. Southington Bd. of Educ.*, 334 F.3d at 223; *see also Hardin v. Straub*, 490 U.S. 536, 539, 109 S.Ct. 1998, 104 L.Ed.2d 582 (1989). Connecticut's continuing course of conduct doctrine is understood to be a tolling mechanism. *See Neuhaus v. DeCholnoky*, 280 Conn. 190, 201, 204, 905 A.2d 1135 (2006); *Scruggs v. Meriden Bd. of Educ.*, 3:03CV2224(PCD), 2005 WL 2072312, at *4 (D.Conn. Aug. 26, 2005), *vacated in part on other grounds*, 2006 WL 2715388 (D.Conn. Sept. 22, 2006) ("A finding of a continuing course of conduct tolls the statute of limitations, which does not begin to run until the course of conduct is complete." (citing *Sanborn v. Greenwald*, 39 Conn.App. 289, 295, 664 A.2d 803 (1995))). Therefore, Connecticut's tolling principles apply. *See Scruggs*, 2005 WL 2072312, at *4–5 (applying Connecticut law on tolling with respect to a Rehabilitation Act claim).[6]

> The Connecticut Supreme Court has held that in order to support a finding of a continuing course of conduct that may

---

**5.** The Lilly Ledbetter Fair Pay Act of 2009, Pub. L. No. 111–2 (Jan. 29, 2009), which was adopted after *Bazemore*, does not change the analysis. Under the Act, "an unlawful employment practice occurs, with respect to discrimination in compensation ..., when a discriminatory compensation decision or other practice is adopted, when an individual becomes subject to a discriminatory compensation decision or other practice, or when an individual is affected by application of a dis-

criminatory compensation decision or other practice, including *each time wages, benefits, or other compensation is paid*, resulting in whole or in part from such a decision or other practice." *Id.* at § 3 (emphasis added) (amending 42 U.S.C. § 2000e–5(e)).

**6.** The court recognizes that some federal courts have applied *Morgan* to determine whether conduct alleged to violate the Rehabilitation Act was discrete or continuous.

toll the statute of limitations there must be evidence of *the breach of a duty that remained in existence after commission of the original wrong related thereto. That duty must not have terminated prior to commencement of the period allowed for bringing an action for such a wrong.* Where we have upheld a finding that a duty continued to exist after the cessation of the act or omission relied upon, there has been evidence of either a special relationship between the parties giving rise to such a continuing duty or some later wrongful conduct of a defendant related to the prior act. The continuing course of conduct doctrine reflects the policy that, during an ongoing relationship, lawsuits are premature because specific tortious acts or omissions may be difficult to identify and may yet be remedied.

*Neuhaus v. DeCholnoky,* 280 Conn. 190, 201–02, 905 A.2d 1135 (2006) (internal brackets, citations, ellipses, and quotations omitted) (emphasis in original). "Most Connecticut case law regarding the continuing course of conduct doctrine deals with medical malpractice, legal malpractice, or situations in which there are continuing misrepresentations," rather than discrimination which is at issue here. *Scruggs,* 2005 WL 2072312, at *5. However, the plaintiff has alleged facts that could establish a continuing course of conduct under the *Neuhaus* standard. She contends that the defendants had an ongoing duty to accommodate her disability and not to discriminate against her because of the disability. Drawing inferences in the light most favorable to the plaintiff, she has alleged that the defendants failed on a continuing basis to accommodate her disability during the period from April 2008 to February 2009, and February 2009 is within the three-year limitations period.

Therefore, the motion to dismiss is being denied as to the Rehabilitation Act claims relating to pre-termination conduct.

## IV. CONCLUSION

Defendant's Motion to Dismiss Plaintiff's Amended Complaint (Doc. No. 44) is hereby GRANTED in part and DENIED in part.

Counts I and II are dismissed except to the extent they seek prospective injunctive relief against Katz under ADA Title I with respect to allegedly unlawful conduct not more than 180 days prior to the date Lee filed a charge of discrimination with the EEOC. Counts IV and V are dismissed in their entirety. Count III remains in its entirety.

It is so ordered.

---

*E.g., Zankel v. Temple Univ.,* 245 Fed.Appx. 196, 199 (3d Cir.2007); *Davis v. New York State Office of Mental Health,* 05CV5599(ARR), 2009 WL 5178440, at *6 (E.D.N.Y. Dec. 31, 2009); *M.K. ex rel. Mrs. K v. Sergi,* 554 F.Supp.2d 175 (D.Conn.2008).

However, those decisions seem to have simply assumed that *Morgan* applied.

